Matthew J. Vitanza, J.
Harris Foodlines, Inc., the defendant herein, was charged by Edward Vokay the Sealer of Weights and Measures for the City of Binghamton with having committed a violation of section 188 of the Agriculture and Markets Law of the State of New York, a misdemeanor. He alleges that on or about the 29th day of May, 1974, in the City of Binghamton, Broome County, New York, the said defendant, through its agents, servants and employees at a store known as "Harris Foodlines” located at 140 Park Avenue in said city, county, and State, did at approximately 1:00 p.m., as a seller, furnish the weight of a commodity of merchandise sold, and did sell less of such commodity than the quantity represented to be sold, to wit, at the aforesaid time and place the defendant sold your deponent two separate packages of speidi meat, one bearing a label indicating the total weight of the commodity to be 1.95 pounds but which, when weighed by your deponent, in fact contained only 1.54 pounds of the commodity and a second package bearing label indicating the total weight of the commodity to be 1.89 pounds that which, when weighed by your deponent, had only 1.63 pounds of the commodity, all contrary to the provisions of the statute in such case made and provided.
The complainant testified that on the day in question he observed 17 packages of speidi meats in plastic containers in *311 the meat counter. That he lifted several packages and tilled them and noticed that they contained considerable liquid. He dumped the liquid out of the containers and reweighed the packages. That the 1.95 pound package reweighed at 1.54 pound after liquid was poured off and that the 1.89 pound package reweighed at 1.63 pound. That he purchased both packages and paid $2.32 and $2.25 for the packages respectively.
The complainant claims an overcharge of 49 cents and 31 cents respectively. Those amounts represent moneys paid for marination liquid instead of meats. The People contend that sales price of $1.19 per pound should be the amount paid by the customer for meat and not for the marinated liquid.
The defendant contends that the packages were intended to contain marinated meats known as speidis a prepared meat product and not just meats. Subdivision 8 of section 96-g of the Agriculture and Markets Law defines "meat” as meaning "the edible part of the muscle of cattle, swine, sheep, goats, horses and other domesticated animals which is skeletal or which is found in the tongue, in the diaphragm, in the heart or in the esophagus, with or without the accompanying or overlying fat, and the portions of bone, skin, nerve and blood vessels which normally accompany the muscle tissue and which are not separated from it in the process of dressing. It does not include the muscle found in the lips, snout or ears. Any edible part of the carcass which has been manufactured, cured, smoked, processed or otherwise treated shall not be considered meat”. In the opinion of this court speidis should not be considered meats in their marketable state, as they have been treated by a process known as marination. Marination is the immersing of meats into a prepared liquid of vinegar or wine seasoned with herb, spices, etc., for a period of time until the liquid has permeated the tissues of the meat.
In their marketable state speidis constitute "meat food products” which are defined in subdivision 10 of section 96-g as meaning "any product capable of use as human food which is made wholly or in part from any meat or other portion of the carcass of any animal”.
The defendant is charged with violating section 188 of the Agriculture and Markets Law and in particular paragraph 2 of said section which states that if the defendant "be the seller and furnishes the weight or measure of the commodity or article of merchandise sold, he shall not sell or deliver less *312 of any such commodity or article of merchandise than the quantity represented to be sold”.
Section 221.9 of the commissioner’s regulations entitled, "Method of sale of specific commodities”, at subdivision (c), "Meat, poultry, and fish”, states "Except for immediate consumption on the premises where sold, or as one of several elements comprising a ready-to-eat meal sold as a unit for consumption elsewhere than on the premises where sold, all meat, meat products, poultry (whole or parts), all fish and seafood, except shellfish, offered or exposed for sale or sold as food shall be offered or exposed for sale and sold by weight. When meat, poultry, fish or seafood is combined with or associated with some other food element or elements to form either a distinctive food product or a food combination, such food product or combination shall be offered * * * for sale and sold by weight, and the quantity representation may be the total weight of the product or combination, and a quantity representation need not be made for each of the several elements of the product or combination” (1 NYCRR 221.9 [c]).
In reading the foregoing regulation in connection with section 188 of the Agriculture and Markets Law which this defendant allegedly violated, this court must consider the various aspects of product involved. Speidis are a distinctive food product, which even has its own special designation or name.
Should subdivision (c) of section 221.9 of the commissioner’s regulations be applied to speidis as a distinctive food product thus allowing it to be offered for sale by combined weight of both the meat and the food element (marination liquid) without setting forth the weight of each ingredient, or should speidis be considered as meat or meat products which should be labeled and sold by the net weight of the meat?
The complainant who is the Sealer of Weights and Measures for the City of Binghamton contends that his instructions (by letter from the commissioner’s office) are that the speidi meats are to be weighed separately, the weight noted on the container label and then additional marinated liquid added. This court agrees this would be a proper method of offering speidi for sale. The purchasing public is entitled to know how much meat is contained in the container. It is the marinated meat and so much of the marination liquid which adheres to the meat that is placed on skewers charcoal broiled and then consumed. However, the container should contain *313 the marinated liquid in order to insure continued marination of the meat. While broiling, the speidis are often coated with additional marination liquid. The excess marination liquid is discarded.
The volume of speidis sales in this area amount to millions of dollars. It is an item which is peculiar to the Southern Tier of this State and is not marketed on a State-wide basis. The commissioner’s regulations are State-wide. It is obvious to this court that the above-quoted subdivision (c) of section 221.9 of the commissioner’s regulations was not promulgated with speidis in mind. This defendant is entitled to know what standard he has to comply with. The commissioner should amend his regulations to include a category for meat products like speidis where the sales container consists of consumable and nonconsumable portions. A definite standard should be set up so that the supplier will know what he has to supply and public will know what they are paying for. Such standard should be similar to that set up in subdivision (c) of section 221.9 for ready-to-cook stuffed poultry products, where the label must show the total net weight of the poultry product and the minimum net weight of the poultry in the product. In the case of speidis the label should state the total net weight of the combined speidi meats and marinated liquid and the minimum net weight of the speidi meats in the product.
This would be a clear and unambiguous standard which suppliers, such as this defendant, would have fair notice and would not leave the supplier to guess whether he is to put the total weight of the combined product on the label as in the second portion of subdivision (c) of section 221.9 of the commissioner’s regulations and price the container according to the combined weight or the net weight of the meat product in the first portion of said section and price accordingly.
Since speidis are a distinctive food product and the standards set up in subdivision (c) of section 221.9 of the commissioner’s regulations, as they now exist, are such that speidis could fall into either category. I find the defendant not guilty. I am mindful of the Director of Bureau of Weights and Measures letter to the Binghamton Sealer of Weights and Measures dated August 6, 1968 in making this decision. However, no rule or regulation adopted by the Department of Agriculture and Markets has the effect of law unless published in the State Bulletin (Agriculture and Markets Law, § 19). I am of the opinion that the defendant was entitled to *314 rely on the commissioner’s regulations which are not definite and certain as to speidis.